UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL RODRIGUEZ, *individually and on behalf of a class of similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES GYPSUM COMPANY**,<br><br>Defendant. | Case No.: 1:24-cv-06921<br><br>District Judge John Robert Blakey<br><br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PROTECTIVE ORDER [19]**

Plaintiff respectfully requests that this Court deny Defendant's ("USG" or Defendant) motion for protective order. [19] (hereinafter the "Motion").[1] *First,* the Motion seeks to impermissibly restrain counsel's First Amendment right of free speech in three ways by requiring Plaintiff's counsel to (1) "notify Defendant of their intent to communicate" with putative class members, (2) "provide Defendant with the opportunity to review," edit, and add additional comments and language to all communications, and (3) allow Defendant "to determine whether it need[s] to seek an order" (i.e. "pre-approval") *prior to* Plaintiff's counsel being able to communicate with putative class members. *See* [19] ¶¶ 2, 11-13. The frivolity of Defendant's Motion is underscored by its omission of controlling authority from the United States Supreme Court in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981),[2] and its progeny (not *Woods v. New York*

---

[1] On October 28, 2024, Plaintiff's counsel requested, pursuant to the Court's October 24, 2024, minute entry [22], that Defendant withdraw its Motion given the Court's recognition that *Gulf Oil* is the controlling authority on any communications between putative class members and, as a result, the Motion is wholly without merit, but Defendant declined to withdraw it.

[2] Of which Defendant is well aware, *see* pages 13-15 below.

Page **1** of **16**

*Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982), as relied upon by Defendant), and more recent precedent from and within the Seventh Circuit that have outright rejected the exact relief Defendant seeks here. The United States Supreme Court requires Defendant to first demonstrate (through evidence rather than generalized concern) a clear record and specific findings that the communication is coercive, misleading, or abusive and, if any only if that occurs, the Court must *weigh* a need to impose such an extreme limitation on First Amendment protections. Defendant cannot overcome such a burden here because the advertising letters are not "coercive, misleading, or abusive."

*Second*, Plaintiff's counsel sent potential putative class members an investigation letter – clearly marked as "**\*ADVERTISING MATERIAL\***" – that describes an overview of the allegations of the lawsuit, the existence of an investigation, types of potential recovery if a violation is proven, and contact information listed to inquire over a no strings attached free and confidential phone consultation in the event the potential putative class member experienced one or more issues explained in the investigation letter. Importantly, *nothing* contained therein is coercive, misleading, or abusive. As such, Defendant's unprecedented request should be rejected.

And *third*, Defendant attempts to frame the advertising letters as "Pre-Certification Notice" to improperly support its narrative that *Woods* applies, but the letter clearly does not constitute "notice" of the lawsuit that would be supervised by the Court after it orders conditional certification. Rather, the letter is ethically compliant advertising material, does not purport to be judicially approved, does not include a consent form, and is clearly marked as "**\*ADVERTISING MATERIAL\***" because it was sent to assist Plaintiff's counsel's duty to investigate the allegations in the case through constitutionally protected speech.

I. **Statement of the Relevant Case History and Facts**

Plaintiff Rodriguez filed this Class and Collective action to recover unpaid wages due to him and similarly situated employees of USG. *See generally* [1]. Plaintiff's Complaint alleges that Defendant failed to pay him and similarly situated employees for all hours worked due to several practices/policies including Defendant's regular rate miscalculation and Defendant's failure to pay for all time worked as recorded in Defendant's timekeeping system. *Id.* ¶¶ 46-96. In its Answer, Defendant admits that Plaintiff was employed as an hourly, non-exempt employee, [8] ¶ 11, that Plaintiff and other employees worked in excess of forty (40) hours in a workweek, *id.* ¶ 42, and that it is aware of the overtime payment requirements of the FLSA, *id.* ¶ 147. Notably, Defendant admits that it failed to include one or more forms of "Additional Remuneration" in the regular rates of pay for Plaintiff and other employees. *Id.* ¶ 52. Specifically, as to Rodriguez, Defendant admits that it did not include Plaintiff's productivity incentive in the regular rate calculation and that Rodriguez's regular rate of pay would have been higher had the bonus been included. *Id.* ¶ 54. Defendant also admits that Plaintiff and other non-exempt employees are expected to clock in/out near the scheduled beginning or end of their shifts, that "pre-shift meetings and a 'shift-relief process' exist in some locations," and employees are "expected to participate in a shift relief process." *See id.* ¶¶ 55-57, 64.

After the lawsuit was filed, Plaintiff's counsel sent ethics-compliant advertising material to individuals Plaintiff's counsel believed to be former and/or current employees of USG. The letter itself is conspicuously designated as "**\*ADVERTISING MATERIAL\***" on each page (a designation that was also included on all outside envelopes), and the letter clearly indicates that it is sent to investigate possible wage issues at USG, describes an overview of the issues alleged in the lawsuit, does not promise recovery of any compensation, and lists Plaintiff's counsel's contact

information to discuss confidentially in the event the worker believes any of the allegations apply to them. [19-1]. Further, the letter is "without any strings attached" and provides that "[i]f we identify a violation, you do not have any obligation to pursue your legal claims." *Id*. The letter advises that the recipient should "disregard this mailing" if they are already represented by other counsel or are in a management position. *Id*. Importantly, the letter **does not** include a consent form and does not purport to be judicially sponsored or authorized by the Court. And although Defendant does not assert non-compliance, the content of the letter and its envelope are consistent with communications approved by independent ethics counsel to ensure compliance with the Illinois Rules of Professional Conduct.

**II.     Applicable Law and Argument**

        **A.     The Court Should Deny Defendant's Motion Because It Seeks Unconstitutional Infringements on Representative Plaintiff's (and Counsel's) First Amendment Right to send Non-Abusive, Non-Misleading, Non-Coercive, and Ethically-Compliant Advertising Letters**

As an initial matter, Defendant does not and cannot deny Plaintiff's counsel's right to communicate with putative class members. [19] ¶¶ 13, 20. Instead, USG seeks an Order restrictively requiring Plaintiff's counsel to (1) "notify Defendant of their *intent* to communicate" with putative class members, (2) "provide Defendant with the opportunity to review," edit, and add additional comments and language to all communications, [19] ¶ 2 – including by ordering Plaintiff's counsel to include (a) a statement of USG's position; (b) a statement that USG denies the allegations, (c) a statement asserting USG's defenses, (d) a statement of all possible levels of participation from USG's perspective, (e) an explanation of USG's rights, (f) a statement of USG's position on the nature of a Section 216(b) collective action, and (g) any other comments USG deems necessary, [19] ¶¶ 11-12 – and (3) allow Defendant "to determine whether it need[s] to seek an order" (i.e. "pre-approval") prior to Plaintiff's counsel being able to communicate with putative

class members, [19] ¶ 2. In other words, Defendant proposes **at least three levels, and at least eight instances of, restraint** on Plaintiff's counsel's First Amendment protected speech. Defendant's proposed restrictions on communications are each separate unconstitutional limitations on the freedom of speech. *See* U.S. Const. Amend. I (there can be "no law … prohibiting the free exercise thereof; or abridging the freedom of speech").

*Gulf Oil*, 452 U.S. 89, which concerned whether limitations on plaintiff's counsel's pre-certification communications with class members violated the First Amendment, is clearly controlling here notwithstanding Defendant's complete failure to address it. In *Gulf Oil*, the Supreme Court held that *prior to* any court entering an order limiting any speech, a protective order requires the movant to show good cause by submitting "a particular and specific demonstration of fact." *Gulf Oil*, 452 U.S. at 89, n. 16. Broad, stereotyped and conclusory statements of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient. *See id*. To that end, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. The "mere possibility of abuses does not justify routine adoption" of restrictions. *See id.* at 104. The moving party bears the burden of showing that the nonmovant has engaged in coercive, misleading, or other abusive communications with the putative class. *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (applying *Gulf Oil*). In other words, (1) USG as the moving party must demonstrate that there is a clear record for the Court to reach a specific finding that the communications are coercive, misleading, or abusive; (2) the court must weigh the need to impose such extreme limitations on speech in light of the First Amendment rights of the nonmovant; and (3) and order must be carefully drawn to limit speech as little as possible consistent with the rights

of the parties under the circumstances. By way of example, in *Piekarski*, the Court rejected an employer's arbitration agreements sent to putative class members that had the effect of confusing or misleading potential class members to prevent them from participating in the litigation.

Likewise recognizing the constitutionally protected right to freedom of speech, the Seventh Circuit in *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000), declared that "plaintiffs have a right to contact members of the putative class… and any discovery limitations should be carefully drawn." (Citing *Gulf Oil*, 452 U.S. at 101; *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 102 F.3d 869, 879 (7th Cir. 1996 )). In *Williams*, the Seventh Circuit vacated the district court's protective order, agreed both that plaintiffs have a right to contact potential class members, courts have limited authority to restrict such communications in accordance with *Gulf Oil*, and in doing observed that a general concern over the impact of plaintiffs' contact with putative class members with an employer's business does not constitute a clear record. *Id.; see also Fauley v. Drug Depot, No.* 15 C 10735, 2018 U.S. Dist. LEXIS 243581, at *5-6 (N.D. Ill. Feb. 13, 2018) (citing *Gulf Oil* and *Williams*, observing that any protective order must be based on a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."); *Wiginton v. CB Richard Ellis, Inc.,* No. 02 C 6832, 2003 U.S. Dist. LEXIS 16266, at *8-9 (N.D. Ill. Sep. 15, 2003) (the court "must still have a 'specific record showing by the moving party of the particular abuses by which it is threatened.'" (citing *Gulf Oil*, 452 U.S. at 102)). In other words, non-abusive, non-misleading, non-coercive, and ethically-compliant communication with putative class members can never be restricted under *Gulf Oil, Williams*, and their progeny.[3] Requiring any party to obtain prior approval from the other side to unilaterally determine whether it subjectively believes contents of communication is

---

[3] This Court also cited *Gulf Oil* in its October 24, 2024 minute entry [22].

misleading, coercive, or abusive is an unconstitutional restriction of free speech.

As here, direct-mail solicitation by attorneys is one form of constitutionally protected commercial speech. *See Shapero v. Kentucky Bar Assoc.,* 486 U.S. 466, 466-72 (1988) ("Lawyer advertising is in the category of constitutionally protected commercial speech.") (citing *see Bates v. State Bar of Arizona,* 433 U. S. 350 (1977)). That is, attorneys are free to send unprompted solicitation letters, which are by definition "the right to solicit legal business" as long as such communications are "truthful and nondeceptive." *Shapero,* 486 U.S. at 479. The Seventh Circuit likewise agrees that attorney advertising letters are protected by the First Amendment consistent with *Shapero*. *See Adams v. Att'y Registration & Disciplinary Comm'n of Supreme Ct. of Illinois*, 801 F.2d 968, 972 (7th Cir. 1986) (affirming that attorney advertising is permissible as long as it is not false, deceptive, or misleading).

In this case, Defendant has put the cart before the horse when it completely side-steps the factors set forth in *Gulf Oil* and fails to cite said controlling authority. Defendant, as the moving party, fails to submit any evidence to demonstrate a clear record and specific findings of a "coercive, misleading, or abusive" communication. Defendant's only apparent "concern" is that the advertising letter does not contain Defendant's language which is specifically designed to dissuade affected employees from speaking with Plaintiff's counsel to discuss USG's wage payment practices that violate state and federal law. *See* [19] ¶¶ 11-13. In the Seventh Circuit, these types of general concerns do not constitute a clear record of coercive, misleading, or abusive communication. *See Williams*, 204 F.3d at 759. Indeed, these general objections are routinely raised by employers when opposing a plaintiff's Motion for Conditional Certification under 29 U.S.C. § 216(b). Even then, however, the "complete" information Defendant seeks to include is not required at all and has been rejected by many Courts *in the context of court-authorized notice*

given that such language has the effect of chilling participation and dissuading individuals from joining the lawsuit. Defendant's counsel has even argued for inclusion of similar terrorem language (as it suggests here) in the context of court-authorized notice, but the court declined to include such language. *See Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016) (Pallmeyer, J.) (further citation omitted) ("Where an FLSA collective action could include a large number of opt-in plaintiffs, a warning to each potential plaintiff that he or she may be required to sit in depositions and testify is unnecessary. The possibility that any one plaintiff will be so required is slim[;] representative discovery may be the superior approach anyway[;] and the risk of chilling would-be plaintiffs' participation in the collective action may well outweigh the risk to those plaintiffs of incurring litigation costs (by way of lost time or even counsel fees) as a result of their participation."). Defendant's Motion fails to satisfy even the first prong of the *Gulf Oil* test and, for this reason alone, the Court should deny it in its entirety.

Ultimately, Defendant argues that Plaintiff's counsel's right to free speech is secondary to Defendant's review, modification, and approval of Plaintiff's counsel's communications. Further, requiring prior approval before communicating with putative class members would inevitably cause further delay and motion practice over disagreements of what Defendant subjectively believes to be coercive, misleading, or abusive. This contradicts *Gulf Oil*, which protects the fundamental constitutional rights of Plaintiff's counsel to communicate freely and truthfully. USG has not provided any legal authority or evidentiary support to override Plaintiffs' constitutional protections for commercial speech. As such, the Court should deny the Motion.

### B. Defendant's Reliance on *Woods* is Misplaced – the Advertising Letters Are Not "Notice"

Ignoring *Gulf Oil* and *Williams*, Defendant relies on *Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) for the notion that Plaintiff's counsel must *first* (1) notify Defendant of

any *intent* to communicate, (2) send any proposed communications to Defendant's counsel for an opportunity to review, object to, and insert all desired language, and (3) require "pre-approval" by Plaintiff's counsel. [19] ¶¶ 2, 11-13. However, Defendant's strained claim of right to interfere with "ATTORNEY ADVERTISING," ethically compliant, and constitutionally protected communications between counsel and prospective clients is based upon inapplicable Seventh Circuit authority that narrowly relates to defense counsel's right to review a proposed notice *authorized by the court* or *purporting to be authorized by the court*. Indeed, as belabored above, *Gulf Oil* and the Seventh Circuit specifically *allow* plaintiffs to communicate with putative class members through ethically compliant communications – "plaintiffs have a right to contact members of the putative class." *Williams,* 204 F.3d at 759. Outside of the context of a court-approved formal notice to prospective members of the collective about the litigation, *Woods* does not address communications between plaintiff's lawyers and prospective members. The *Woods* decision even recognized that limits on lawyers' communications with prospective members implicates the First Amendment, though finding such concerns were not at issue in the case. *See Woods*, 686 F.2d at 581.

To underscore this point, *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.,* No. 4:20-cv-00004-SEB-DML, 2020 U.S. Dist. LEXIS 260425, at *1 (S.D. Ind. Oct. 1, 2020), is instructive and directly addresses Defendant's motion. In *Rodgers-Rouzier*, defendants alleged that plaintiff's counsel engaged in inappropriate solicitation of employees and sought to place limits on plaintiff's counsel's future communications with defendants' employees. Observing that defendants' requested relief was "extraordinary," the court rejected any requirement that the court or defendant review and pre-approve class member communications with plaintiff's counsel:

**The defendants' contention that *Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982), permits or even *requires* the court or the defendant to review and pre-approve all communications the plaintiff's counsel has with putative members of the collective is wrong**. *Woods* holds **only** that the court presiding over an FLSA collective action… has the power to approve a notice to putative members about the litigation, their rights to opt into the collective, and the means to exercise the opt-in right, and that such a notice should not "go out on court letterhead over the signature of a court official." *Id.* at 580… Outside of the context of court-approved formal notice to prospective members of the collective about the litigation and opt-in procedures, ***Woods* does not address communications between the plaintiff's lawyers and prospective members**. Indeed, the court recognized that limits on lawyers' communications with prospective members implicates the First Amendment, though finding such concerns were not at issue in the case. *Id.* at 581.

**The First Amendment protects a lawyer's right to communicate with prospective members, and a court cannot prohibit those communications as a matter of routine**. Any limits on such communications must be based on a clear record of abuse or interference with the court's case management and a careful balancing of the lawyers' rights. *Williams*, [204 F.3d at 759]. While the defendants complain that plaintiff's counsel is involved in prohibited solicitation and cite case law decrying solicitation, they have not cited any laws actually prohibiting alleged solicitation. Nor is there persuasive evidence that counsel even initiated contact with putative members of the collective for the purpose of inducing them to become class members,[4] as opposed to gathering information pertinent to issues in the case or responding to inquiries from putative members. Moreover, the fact that lawyers have a First Amendment right to communicate with prospective members about the lawsuit indicates to this court that there is no generalized rule prohibiting "solicitation." Instead, as the case law reveals, courts generally have refused to prohibit counsel's communications with putative members without a showing that they are false, misleading, or coercive. *See Morgan v. El Dorado Home Care Services, LLC,* 2016 U.S. Dist. LEXIS 201899 [] (W.D. Ark. Nov. 16, 2016 (collecting cases around the country). *See also* The New Manual for Complex Litigation (Fourth) § 21.12 (2004) ("Most judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct.") No such showing has been made here. **Because the court is not convinced that the plaintiff's counsel has**

---

[4] And while Defendant might attempt to distinguish *Rodgers-Rouzier* on the basis that, here, Plaintiffs' counsel initiated contact, in *Rodgers-Rouzier* plaintiff's counsel also initiated contact with individuals through social media. Moreover, the advertising letters here do not inform recipients that they are eligible to join the case, and instead communicate an intent to gather more information or answer questions that the recipient may have – "[w]e are investigating whether you may also have unpaid overtime claims…. If you believe any of the above may apply to you, it is possible that you were not fully or properly compensated for all of the work… If you are interested in speaking with an unpaid overtime attorney to explore whether you may have claims of unpaid overtime compensation, please feel free to" contact us. [19-1]. Nevertheless, *Rodgers-Rouzier* underscores that Defendant's reliance on *Woods* is in error.

Page **10** of **16**

> **been engaged in systematic, improper contact with putative members or engaged in false or misleading communications about this lawsuit, the court DENIES the defendant's motion for protective order.**

*Rodgers-Rouzier*, 2020 WL 12654668, at *3 (S.D. Ind. Oct. 1, 2020) (emphasis added). Defendant's reliance on *Woods* is misplaced and should be rejected.

Next, Defendant attempts to mislead when it cites *Heitmann v. City of Chicago*, 2004 WL 1718420 at *2 (N.D. Ill. 2004), for the notion that plaintiff was "admonished" for "failing to follow the then 20-year old rule from *Woods*[.]" [19] ¶ 7. *Heitmann*, like *Woods*, is readily distinguishable – in *Heitmann*, the court addressed the propriety of plaintiff sending notice of the lawsuit *and* consent forms on court letterhead over the signature of court officials. *See Heitmann*, No. 1:04-cv-03304, Doc. #2, at PageID ##11-13, attached hereto as **Exhibit A**. These are obvious and important distinctions because Plaintiff's advertising letters clearly do not represent to be or otherwise constitute court-approved notice. Defendant's reliance on *Scott v. Sunrise Healthcare Corp.*, 1995 WL 549944 (N.D. Ill. Sept. 8, 1995), is likewise misplaced and distinguishable. In *Scott*, plaintiff's counsel issued letters *claiming to have been authorized by the court*. *Id*. at *1. No such claim is contained in Plaintiff's counsel's advertising letters in this case. Further, in *Scott*, plaintiff's counsel included a consent form to join the litigation. *Id*. Again, a consent form was not included with Plaintiff's counsel's advertising letters.

This Court has previously recognized the important distinctions between *de facto* notice and mere advertising letters when granting conditional certification even though the defendant argued that the potential opt-in plaintiffs had already effectively received "notice" through pre-certification communications. As this Court observed, the distinguishing factor was the fact that, by the time of that communication, the case "had not yet been conditionally certified . . . . Thus, as of that date, Plaintiffs had not yet been provided an opportunity to issue *court-*

authorized notices to the conditional classes. Plaintiffs should be given the opportunity to follow through with [employees] with the formal opt-in process contemplated by the FLSA; this will ensure that all potential plaintiffs with viable claims have notice." *Pfefferkorn v. Primesource Health Grp., LLC*, No. 17-cv-1223, 2019 U.S. Dist. LEXIS 14168, at *15-16 (N.D. Ill. Jan. 29, 2019) (Blakey, J.) (emphasis in original). *See Krupp v. Impact Acquisitions, LLC, et a.*, No. 2:14-cv-950-PP, Doc. No. 78 (E.D. WI. Jan. 3, 2017) (Pepper, J.) (attached as **Exhibit B**) (citing *Woods*, the Court delineated the distinction between sending out invitations to join a lawsuit in the form of judicial notices versus advertising letters and that "plaintiff did nothing inappropriate, unethical, or wrong in sending out the advertising letters, and that there was no basis for imposing sanctions. The court **DENIES** the defendant's motion to strike, for protective order, and for sanctions.").[5]

In this case, Plaintiff investigated claims in the lawsuit by mailing straightforward and non-abusive, non-misleading, non-coercive, and ethically-compliant advertising letters. The letters are not *de facto* notice, do not represent to be sent or authorized by the court, and include no consent form. Stymieing Plaintiffs from informally investigating the case through an advertising letter is an extreme and unnecessary request, particularly here when *Woods* does not apply, and a Constitutional Amendment and Supreme Court precedent require the opposite.

The remaining legal authority of Defendant, [19] ¶¶ 10, involve either defense counsel's right to review a *court-authorized notice* or the issuance of a notice that purports to have been

---

[5] *See also Moore v. Consol. Pa. Coal Co. LLC*, Civil Action No. 2:23-cv-1991, 2024 U.S. Dist. LEXIS 51571, at *21-22 (W.D. Pa. Mar. 22, 2024) (Denying the defendant's motion to direct plaintiffs to cease and desist soliciting putative class members because "[p]arties do not need court-approval to locate other 'similarly situated' persons and accusations without more is not enough."); *Bailey v. Paradies Shops, LLC*, No. 2:20-cv-02610, 2020 WL 3488517 (S.D. Ohio June 26, 2020) (denying defendant's motion for temporary restraining order despite plaintiff's counsel directly mailing advertising letters to current and former employees of the defendant and related entities throughout Florida, Tennessee, Texas, Ohio, and Georgia); *Loschiavo, et al. v. Advanced Drainage Systems, Inc.*, No. 2:21-cv-05069, ECF No. 30, May 23, 2022 (S.D. Ohio) (denying motion for temporary restraining order and preliminary injunction to prevent plaintiffs' counsel from soliciting putative class members).

authorized by the court, and are likewise misplaced. In *Howard v. Securitas Sec. Services, USA Inc.,* 630 F. Supp. 2d 905, 908 (N.D. Ill. 2009), for example, the court had already conditionally certified the collective/class-action suit, and defendant argued that plaintiff's counsel's website was an inappropriate attempt by plaintiff's counsel to communicate with prospective class members outside of the notice process. *Id*. Apart from content on the website presenting the allegations as facts, *Howard* held that the website was not misleading; the court's concern with the website was that the language presented the allegations as facts, but denied the motion for a protective order because defendant had failed to offer any evidence of actual harm and "[a]bsent evidence, the court will not presume that the entire case has been tainted and will not impose the drastic sanctions requested." *Id*. at 909 (citing *Gulf Oil*, 452 U.S. at 103). In this case, the litigation is still in the pre-notice stage. Counsel's communications do not purport to be notice but are conspicuously marked as "**\*ADVERTISING MATERIAL\*.**" Moreover, the letter clearly represents that the lawsuit is in the investigation stage and includes the word "alleges" no less than eight (8) times. Finally, *Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1088 (S.D. Iowa 2007) concerned counsel's communications that were primarily based upon possible improper solicitation in light of the then-existing Iowa Rule of Professional Conduct 32:7.8(c).[6] No such rule is at issue here. In fact, Defendant does not claim that the advertising letter is unethical and defense counsel previously represented that letter is compliant. [19-3] (noting that during the Fed. R. Civ. P. 26(f) Conference defense counsel did not believe the letters, or their content, to be "unethical, misleading, or otherwise."). Ultimately, Defendant can point to no authority barring

---

[6] This abolished rule prohibited an attorney from seeking employment by prospective class members, although counsel could accept unsolicited employment from such individuals. *Jones*, 517 F. Supp. 2d at 1086; https://www.legis.iowa.gov/docs/ACO/CourtRulesChapter/12-31-2012.32.pdf (last accessed Nov 5, 2024).

Page **13** of **16**

Plaintiff's Counsel from unsupervised communications in the form of ethics-compliant, attorney advertising letters that are clearly not "Notice." Defendant's motion should be denied.

### C. Defendant is Demonstrably Aware that *Gulf Oil* is Controlling and Permits Plaintiff's Counsel's Communications

In light of the drastic relief called for in Defendant's Motion, it is important to point out that Defendant's counsel certainly understands and appreciates the difference between an advertising letter, court-authorized notice, and actual coercive, misleading, or abusive communications. In a recent response in opposition to a motion for a protective order directed at its client, Defendant's attorney (Noah A. Finkel) cited directly to *Gulf Oil* for the proposition that "[a]ll parties generally are permitted to communicate with potential class members before certification." *Thomas v. TEKsystems, Inc.*, No. 2:21-cv-460, Dkt. No. 104, at p. 2 (W.D. Pa. Jan. 4, 2024) (citing 452 U.S. at 101–02). Because it suited the client's needs at the time, while recognizing the potential infringement on First Amendment rights, the need for specific findings, and the requirement that any restriction be drawn as narrowly as possible, defense counsel here communicated with putative class members without adhering to the extreme prior restraints on communication that Defendant proposes must apply in this case. *See also Jones v. Nat'l Council of Young Men's Christian Associations of U.S.*, No. 09 C 6437, 2011 WL 1312162, at *5 (N.D. Ill. Mar. 31, 2011) (citing *Gulf Oil*, the Court denied plaintiffs' motion for protective order even though the law firm of Seyfarth Shaw LLP communicated with class members *and in doing so solicited and obtained release agreements* as well as declarations from putative class members).[7]

---

[7] A copy of the employer's Response in Opposition – citing *Gulf Oil* in at least 4 instances to justify communicating with putative class members – is attached as **Exhibit C**. *See also* **Ex. C**, at Page 6 of 23 ("All parties generally are permitted to communicate with potential class members"). As Defendant's counsel also recognized on January 4, 2024, "the standard for an order limiting communications" is **"quite high."** *Id*. at page 7 of 23 (citing *Camp v. Alexander*, 300 F.R.D. 617, 626 (N.D. Cal. 2014) (emphasis added)).

Thus, it is evident that Defendant's legal team recognizes and agrees with all of the points raised by Plaintiffs. Defendant's attorneys cannot reasonably claim that the First Amendment or Supreme Court precedent grant Defendant the exclusive right to communicate before certification, while denying the same rights to Plaintiff. Furthermore, Defendant's counsel fails to address the inconsistency of claiming that *Gulf Oil* and the First Amendment apply differently in Pennsylvania (as in the *TEKsystems* case) compared to Illinois and the rest of the Seventh Circuit. The Court should reject Defendant's motion and reaffirm the established principle that communications before a case is certified are allowed and protected by the Constitution, as long as they are non-abusive, non-misleading, or non-coercive.

### III. Conclusion

Plaintiff respectfully requests that this Court deny Defendant's motion for protective order because Defendant has failed to meet its burden. Plaintiff's counsel's communications with prospective clients are constitutionally protected speech, the communication is not coercive, misleading, or abusive, Defendant does not have some generalized right to impose such extreme levels of restraint prior to Plaintiff's counsel exercising their First Amendment right, there is no requirement to obtain "pre-approval" from Defendant's counsel, the advertising material does not constitute "notice," and Plaintiff's counsel have not represented their communications as being court-authorized and have not included a consent form with those communications.

Dated: November 6, 2024                                        Respectfully Submitted,

| | |
|---|---|
| */s/ Daniel I. Bryant* | */s/ Joseph F. Scott* |
| Daniel I. Bryant (OH 0090859) | Joseph F. Scott (OH 0029780) |
| **BRYANT LEGAL, LLC** | Ryan A. Winters (OH 0086917) |
| 4400 N. High St., Suite 310 | Kevin M. McDermott II (OH 0090455) |
| Columbus, Ohio 43214 | **SCOTT & WINTERS LAW FIRM, LLC** |
| Phone: (614) 704-0546 | 11925 Pearl Rd., Suite 308 |
| Facsimile: (614) 573-9826 | Strongsville, Ohio 44136 |
| Email: dbryant@bryantlegalllc.com | P: (216) 912-2221   F: (440) 846-1625 |

Esther E. Bryant (OH 0096629)  
**BRYANT LEGAL, LLC**  
3450 W Central Ave., Suite 370  
Toledo, Ohio 43606  
Telephone: (419) 824-4439  
Facsimile: (419) 932-6719  
Email: Ebryant@bryantlegalllc.com

jscott@ohiowagelawyers.com  
rwinters@ohiowagelawyers.com  
kmcdermott@ohiowagelawyers.com

*ATTORNEYS FOR NAMED PLAINTIFF AND OTHER MEMBERS  
OF THE FLSA COLLECTIVE AND PROPOSED RULE 23 CLASS COUNSEL*

## CERTIFICATE OF SERVICE

I CERTIFY that, on November 6, 2024, a copy of the foregoing was served to all counsel of record through the Court's CM/ECF system.

By: */s/ Daniel I. Bryant*  
Daniel I. Bryant (OH 0090859)